**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JOSÉ MANUEL REYES VARGAS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) Civil Action No.: 26-CV-11740-AK |
| v. | ) |
| | ) |
| Warden, Plymouth County Correctional | ) |
| Facility; and PATRICIA HYDE, Boston | ) |
| Field Office Director, ICE-ERO, | ) |
| | ) |
| Respondents. | ) |

**MEMORANDUM AND ORDER ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Before this Court is Petitioner José Manuel Reyes Vargas' ("Petitioner") Amended

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). [Dkt. 9].

Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"), claiming,

inter alia, that the bond hearing afforded to him "failed to comport with the requirements of due

process." [Dkt. 9 at 7 ¶ 71]. Respondents oppose the Petition, arguing, among other grounds,

that the Court lacks jurisdiction to review the Immigration Judge's ("IJ") custody determination,

Petitioner failed to exhaust his administrative remedies, and the IJ's determination of Petitioner

as a flight risk was supported by evidence. [Dkt. 14].

For the reasons stated below, the Petition is **GRANTED**, and Respondents are

**ORDERED** to immediately release Petitioner.

1

## I.    BACKGROUND

Petitioner is a 39-year-old native and citizen of the Dominican Republic, born on June 3, 1986 in Santiago, Dominican Republic. [Dkt 3-3 at 12].  He was admitted to the United States as a conditional lawful permanent resident on June 3, 2022—a status that he obtained being the spouse of a United States citizen at the time. [Dkts. 14 at 4; 14-2 at 7].  He married a United States citizen on October 2, 2020 in Santiago, Dominican Republic, and the marriage ended on February 24, 2023. [Dkt. 3-4 at 11].

Initially, the conditional lawful permanent resident status lasted two years, set to expire on June 3, 2024. [Id.].  On September 12, 2024, United States Citizenship and Immigration Services ("USCIS") received Form I-751, Petition to Remove Conditions on Residence, from Petitioner. [Dkt. 3-2 at 4].   As a result, USCIS extended Petitioner's lawful permanent resident status for 48 months from June 3, 2024, the date on which Petitioner's lawful permanent status expired. [Id.; Dkts. 3-1 at 9; 3-2 at 4].

During the pendency of his Form I-751, Petitioner traveled from the Dominican Republic to the United States on December 13, 2025. [Dkt. 9 at ¶ 21].  At that time, Petitioner had a valid lawful permanent resident status on which he could travel out of and work in the United States. [Dkt. 3-2 at 4].  Upon re-entry to the United States, Customs and Border Police ("CBP") referred Petitioner to secondary inspection and placed him in the expedited removal process pursuant to 8 U.S.C. § 1225(b)(1). [Dkt. 9 at ¶ 22-23].  CBP recorded Petitioner's sworn statement under Section 1225(b)(1), issued him an order of expedited removal on December 14, 2025, and sent him back to the Dominican Republic. [Dkts. 14-2 at 14; 9 at ¶ 23; 3-2 at 2].  On January 15, 2026, Petitioner requested supervisory review, disputing the legality of the expedited removal order. [Dkts. 3-1 at 8-9; 9 at ¶ 24].  Upon review, CBP acknowledged the error, and vacated the

2

expedited removal order on January 21, 2026. [Dkts. 3-1 at 8-9; 9 ¶ 26].  Additionally, CBP offered to "facilitate [Petitioner's] return to Boston Port of Entry" and "reinspect him upon arrival to determine admissibility." [Dkt. 3-1 at 8].

On January 29, 2026, USCIS, in reliance upon Petitioner's sworn statement at the airport on December 14, 2025, denied Petitioner's Form I-751, and terminated his lawful permanent resident status, finding that Petitioner's marriage with the United States citizen—the basis for his conditional lawful permanent residence—was not entered in good faith. [Dkt. 14-2 at 7-10]. USCIS' decision further advised Petitioner that he could seek review of the denial of his Form I-751 before an IJ in removal proceedings. [Id. at 9].

To effectuate review of his status, Petitioner requested CBP allow him to present himself for reinspection and determination of his admissibility at the Boston Port of Entry and, "if deemed inadmissible, be placed into the removal proceedings rather than returned, so that he may exercise his right to seek review before the Immigration Court." [Dkt. 3-1 at 7].  CBP acceded to this request and asked for Petitioner's flight details beforehand so that his reinspection and admissibility determination could be conducted. [Id. at 5].

Accordingly, Petitioner shared his flight details with CBP and entered the United States on March 13, 2026. [Id.; Dkt. 9 ¶ 28].  CBP admitted Petitioner as a returning conditional lawful permanent resident and referred him to ICE for detention. [Dkt. 14-2 at 6].  Respondents agree that Petitioner's detention is pursuant to 8 U.S.C § 1226(a). [Dkt. 14 at 1-2].

On March 18, 2026, Petitioner filed a Petition for Writ of Habeas with another session of this Court. See Reyes Vargas v. Moniz et al, 26-CV-11320-MJJ (D. Mass. Mar. 25, 2026).  As Petitioner had not sought a bond hearing before the Immigration Court at the time, and Respondents agreed that Petitioner's detention was discretionary under 8 U.S.C. § 1226(a),

another session of this Court dismissed Petitioner's prior habeas petition on March 25, 2026, for having not exhausted the administrative remedy before an IJ. Id. at [Dkt. 10].

Subsequently, Petitioner requested a bond hearing before an IJ on March 31, 2026. [Dkt. 2 at 1-9].  Before the bond hearing, on April 7, 2026, Petitioner filed Form I-751 with USCIS and the Immigration Court. [Dkt. 9 ¶ 35].  On April 9, 2026, the IJ conducted a bond hearing and denied Petitioner's request for bond.  The IJ's reasoning, in its entirety, states: "Petitioner is a flight risk by the preponderance of evidence and there is no bond amount to mitigate the risk of flight." [Dkt. 14-1 at 1].  The IJ's order does not explain why she determined Petitioner to be a flight risk.  Petitioner, however, states that the IJ found him to be a "flight risk only because his application for relief is speculative." [Dkt. 9 ¶ 37].  Respondents do not contest this account and instead argue that application of relief "may not be a sufficiently strong incentive to ensure an alien's appearance." [Dkt. 14 at 15].  Petitioner now invokes this Court's habeas jurisdiction again, alleging that the bond hearing before the IJ did not comport with due process as the IJ applied incorrect legal standards to find Petitioner a flight risk.

## II.    LEGAL STANDARD

Section 2241 confers jurisdiction on this Court to order the release of any person who is held in the custody of the United States in violation of the "laws . . . of the United States" or the United States Constitution. 28 U.S.C. § 2241(c).  The burden rests on the person in custody to prove his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)).

### III.    DISCUSSION

#### A.  Subject-Matter Jurisdiction

Respondents argue that the Court lacks jurisdiction pursuant to 8 U.S.C. § 1226(e) to review the IJ's decision denying bond under 8 U.S.C. § 1226(a).  Respondents argue that Petitioner asks this Court to reweigh evidence, which is beyond the scope of this Court's jurisdiction.  Petitioner, on the other hand, contends that the IJ applied the incorrect standard of law, thus violating Petitioner's due process rights.  As discussed below, Petitioner's challenge is directed at the legality and constitutionality of the IJ's process, and review is, therefore, not barred by Section 1226(e).

Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).  Although the Court may not review the IJ's "discretionary judgment" in weighing of the evidence,[1] Section 1226(e) does not bar "habeas jurisdiction over constitutional claims or questions of law." Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017) (quoting Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011)).

Under Section 1226(e), "district courts have jurisdiction to review [an] Immigration Judge's discretionary bond denial only 'where that bond denial is challenged as legally erroneous or unconstitutional.'" Mayancela Mayancela v. FCI Berlin, Warden, No. 25-CV-348, 2025 WL

---

[1] Section 1226(e) precludes judicial review of Attorney General's discretionary judgments only, as opposed to any judgment. Patel v. Garland, 596 U.S. 328, 341 (2022); Saint Fort v. Ashcroft, 329 F.3d 191, 200 (1st Cir. 2003) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).  However, the Attorney General's discretion, and by delegation, that of IJs, is still bound by constitutional restraints. Hernandez-Lara v. Lyons, 10 F.4th 19, 34 (1st Cir. 2021).  "[C]laims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'" Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting Gutierrez-Chavez v. Immigr. & Naturalization Serv., 298 F.3d 824, 829 (9th Cir. 2002)).

3215638, at \*4 (D.N.H. Nov. 18, 2025) (quoting Diaz-Calderon v. Barr, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020)).  The Court's jurisdiction is thus limited to assessing whether the IJ adopted a constitutionally and legally adequate process in affording a bond hearing to Petitioner.

The district courts in this circuit, and several judges of this Court, have held that this Court may assess the constitutionality of an IJ's custody determination. See, e.g., Miti v. Moniz, No. 26-CV-11327, 2026 WL 884639. at \*1 (D. Mass. Mar. 31, 2026) ("District courts retain habeas jurisdiction to ensure that immigration bond hearings are conducted within constitutional bounds."); Dos Reis v. Vitello, No. 25-CV-10497, 2025 WL 1043434, at \*2 (D. Mass. Apr. 8, 2025) ("[A] court may intervene where an immigration bail determination is *ultra vires* or facially unconstitutional."); Massingue v. Streeter, No. 19-CV-30159, 2020 WL 1866255, at \*4 (D. Mass. Apr. 14, 2020) (district courts may consider whether an IJ's bond hearing was in compliance with constitutionally mandated standards); Garcia v. Hyde, 817 F. Supp. 3d 112, 123-24 (D.R.I. Dec. 3, 2025) (district courts can assess constitutional adequacy of the bond hearing). Respondents agree that the Court may "review bond determinations for compliance with the constitutionally mandated burden of proof" but contend that Petitioner does not present such a challenge. [Dkt. 14 at 3].  The Court disagrees and finds that Petitioner poses a constitutional challenge to the IJ's bond hearing.

Here, Petitioner does not seek reweighing of the evidence.  Instead, he argues "that [the bond hearing] failed to comport with the requirements of due process and resulted in an unlawful deprivation of liberty." [Dkt. 9 at 7 ¶ 71].  Petitioner specifically alleges that the IJ "applied an incorrect legal standard" in finding Petitioner is a flight risk. [Id. at 8 ¶ 75].  He takes issue with the IJ's consideration of his application for underlying relief, and purported speculative nature thereof, in determination of flight risk—an inquiry which Petitioner argues does not require

6

consideration of likelihood of success on underlying relief, and must instead "focus on whether the individual poses a risk of nonappearance based on objective factors such as prior compliance, family ties, residence, and history of appearances." [Id. at 8 ¶ 74].  However, according to Petitioner, the IJ substituted "a 'speculative relief' analysis in place of the required flight risk inquiry" and reached a conclusion unsupported by the record. [Id. at 8 ¶ 75].  As Petitioner poses questions of law and legality of the bond hearing, as opposed to seeking reweighing of the evidence, the Court has subject matter jurisdiction to ascertain whether the IJ's bond hearing was constitutionally and legally adequate.

### B. Exhaustion

Respondents argue that Petitioner must exhaust appellate review of the IJ's decision before the Board of Immigration Appeals (BIA).  Petitioner, however, contends that exhaustion is neither required by statute nor by circumstances.  Petitioner is correct that administrative exhaustion is not required in this case.

The requirement to exhaust administrative remedies emanates either from a statute or common law. Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 174-76 (1st Cir. 2016).  The former deprives a federal court of jurisdiction, while the latter "cedes discretion to a [federal] court to decline the exercise of jurisdiction." Id. at 174.  Here, Respondents agree that "there is no statutory mandate to exhaust a claim for release that could be made to an IJ prior to presenting such claim to the district court." [Dkt. 14 at 12].

Absent statutory requirement for administrative exhaustion, "sound judicial discretion governs" whether Petitioner should have exhausted appeal before the Board of Immigration Appeals ("BIA") prior to seeking release before this Court. Morgan v. Garland, 120 F.4th 913, 927 (1st Cir. 2024) (quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).  In this

discretionary determination, the Court "must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." Anversa, 835 F.3d at 176 (quoting McCarthy, 503 U.S. at 146).

The Supreme Court has recognized "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997) (quoting McCarthy, 503 U.S. at 145-146). These sets of circumstances are: first, where delay could cause irreparable harm to the litigant or undue prejudice to any subsequent judicial action; second, where substantial doubts exist as to agency's institutional competence or power to grant meaningful redress; and third, where the "administrative body is shown to be biased or has otherwise predetermined the issue." Id.

Here, Petitioner's liberty interests are at stake, and "the loss of liberty is [certainly] a . . . severe form of irreparable injury" incurred by Petitioner. Ferrara v. United States, 370 F. Supp. 2d 351, 360 (D. Mass. 2005); see also Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) ("[T]he interest in being free from physical detention by one's own government" is "the most elemental of liberty interests."). The Court may thus excuse exhaustion to protect Petitioner's freedom. Portela-Gonzalez, 109 F.3d at 77 (citing McCarthy, 503 U.S. at 147) (exhaustion may be unnecessary where "'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim' . . . even though 'the administrative decision making schedule is otherwise reasonable and definite.'")

Here, the timeline for administrative exhaustion is unclear, and is likely to further endanger Petitioner's liberty interests for months to years. "In 2024, the [Executive Office for Immigration Review] data showed an average processing time of 204 days for bond appeals" and

that "200 bond appeal cases took a year or longer to resolve." Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1248 (W.D. Wash. 2025). Further, Petitioner is detained pursuant to the discretionary framework under 8 U.S.C. § 1226(a), which provides that any noncitizen "may be arrested and detained pending a decision" on their removal from the United States. Section 1226(a) does not prescribe any specific length of detention and gives discretion to the Attorney General to release noncitizens detained under Section 1226(a). While Section 1226(a) permits release on bond, in cases where the bond is denied, as in Petitioner's case, the detention "continues until all proceedings and appeals are concluded . . . [and] lasts through the initial removal determination proceedings (which themselves can take months or years) and all inter-agency and federal court appeals, even where an individual has prevailed and the Government appeals." Velasco Lopez v. Decker, 978 F.3d 842, 852 (2d Cir. 2020); see also Hernandez-Lara, 10 F.4th at 29-30.

Allowing Petitioner's indefinite detention while this protracted administrative process unfolds, especially when the legality of Petitioner's detention is under challenge, would be a significant harm. Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986) ("[E]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest."). Thus, Petitioner need not exhaust administrative remedies.

Lastly, Petitioner's claims present a constitutional challenge—violation of his due process rights for the IJ's misapplication of law—over which the BIA regularly lacks authority to meaningfully adjudicate given its limited scope of review of the IJ's decision. See Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 238 (W.D.N.Y. 2019) ("[T]he BIA does not have jurisdiction to adjudicate constitutional issues."). Against this backdrop, requiring administrative exhaustion would be a futile exercise in Petitioner's circumstance. Therefore, Petitioner's individual

interests "weigh heavily against requiring administrative exhaustion" and outweigh countervailing institutional interests of "protecting administrative agency authority and promoting judicial efficiency." Miti, 2026 WL 884639, at *5-6 (quoting McCarthy, 503 U.S. at 145, 146).  Accordingly, Petitioner need not resort to BIA's appellate review.

### C.  Sufficiency of Bond Hearing

#### 1.  Standard of Review

The Court's authority to review the IJ's custody determination is "limited."  Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019).  The Court cannot reweigh evidence or review the IJ's discretionary judgments. Diaz-Calderon, 535 F. Supp. 3d at 676 (quoting Arellano v. Sessions, No. 6:18-CV-06625-MAT, 2019 WL 3387210, at *7 (W.D.N.Y. July 26, 2019)) ("[A] district court sitting in habeas review . . . has no authority to encroach upon an IJ's discretionary weighing of the evidence."); see also Pensamiento v. McDonald, 315 F. Supp. 3d 684, 688 (D. Mass. 2018) ("Congress has eliminated judicial review of discretionary custody determinations.").  The Court must also be "mindful of [its] obligation to afford . . . a degree of deference to the [factfinder's] determinations." United States v. Tortora, 922 F.2d 880, 882 (1st Cir. 1990).

Within these limitations, the Court can, however, assess whether an immigration bond hearing comported with due process requirements.  To review the IJ's custody determination for constitutional adequacy, the Court considers whether the IJ applied the correct legal standard. Petitioner may generally show the IJ's failure to apply a correct legal standard by either (1) "point[ing] to the language of the immigration judge's opinion" or (2) "demonstrate[ing] that 'the evidence itself could not—as a matter of law—have supported' the immigration judge's decision to deny bond." Diaz Ortiz, 384 F. Supp. 3d at 143 (quoting Hechavarria, 358 F. Supp.

3d at 240).  For the former, "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard." <u>Akinsanya v. Garland</u>, 125 F.4th 287, 297 (1st Cir. 2025).  For the latter, Petitioner must show that "under the circumstances, no reasonable immigration judge could have come to" conclude Petitioner was a flight risk. <u>Miti</u>, 2026 WL 884639, at *6.  Here, Petitioner points to the IJ's order as well as the evidentiary record to claim the IJ failed to correctly apply the legal standards in finding Petitioner a flight risk.  The IJ did not make any finding about Petitioner's dangerousness and only found him to be a flight risk.  Respondent's claim is also primarily limited to Petitioner's risk of flight.  Thus, the Court limits review only to the question of whether the IJ violated Petitioner's due process rights in finding he was a flight risk.

The Court now identifies the burden and standards that are applicable in an immigration bond hearing such as Petitioner's.  At an immigration bond hearing in this circuit, the government bears the burden of establishing that the noncitizen is either (1) dangerous by clear and convincing evidence or (2) a risk of flight by a preponderance of the evidence. <u>Hernadez-Lara</u>, 10 F.4th at 41.  As Respondents acknowledge, <u>Matter of Guerra</u>, 24 I. & N. Dec. 37, 40 (BIA 2006)[2] provides guidance as to the factors that an IJ may consider in determining whether a non-citizen poses a risk of flight for the purposes of custody determination.  While an IJ has "broad discretion in deciding the factors," they "may" consider "any or all of the following":

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the

---

[2] In <u>Hernandez-Lara v. Lyons</u>, 10 F.4th 19 (1st Cir. 2021), the First Circuit overruled <u>Matter of Guerra</u>, to the extent it placed burden on the noncitizen, as opposed to the government, to prove that he or she is not a flight risk or a danger to the community at the bond hearing.  However, <u>Matter of Guerra</u> continues to guide the IJ's inquiry into determination of flight risk and danger to the community during a custody determination hearing.

alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Id. at 40.

In considering these factors, an IJ's decision should be "reasonable." Id. An IJ may also "consider any evidence in the record . . . when assessing flight risk, provided that such evidence is 'probative and specific.'" Garcia, 817 F. Supp. 3d at 127(quoting Matter of Guerra, 24 I. & N. Dec. at 40-41). While an IJ's determination of flight risk involves discretion, it is still a legal standard that is applied to assess custody determination. The determination of flight risk requires an IJ to consider multiple factors as set out in Matter of Guerra, and thus the IJ's application of flight risk to Petitioner's facts is reviewable. See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) (quoting Wilkinson v. Garland, 601 U.S. 209, 221 (2024)) ("[A]pplication of the 'dangerousness' standard . . . [is] a legal standard so long as federal courts 'can assess whether an IJ correctly applied the statutory standard to a given set of facts.'"). The Court accordingly reviews the IJ's order to determine if it correctly applied the legal standards.

### 2. Petitioner's Bond Hearing was Legally Deficient

In light of the standards set out above, the Court considers: first, whether the IJ's order reflects an application of the correct standard of law to find Petitioner a flight risk; and second, whether Respondents' evidence could—as a matter of law—establish, by the preponderance of the evidence, that Petitioner was a flight risk. Although either of the above determinations would be sufficient to find if the IJ afforded due process to Petitioner, the Court considers both, because Petitioner raises both issues.

While the IJ's order does not set out her reasoning, Petitioner presents an account of the IJ's reasoning. Petitioner's account indicates that the IJ determinatively relied on Petitioner's

application for underlying relief, and purported speculative nature thereof, to find that Petitioner posed a flight risk.  Respondents do not dispute this account.  Rather, they argue that application for relief may not be a sufficiently strong incentive to ensure Petitioner's appearance in removal proceedings.

Based upon Petitioner's uncontested account of the hearing, the IJ did not apply the Matter of Guerra factors to assess whether Petitioner was a flight risk.  The IJ's order states: "[a]fter full consideration of the evidence presented . . . [Petitioner's] request for a change in custody status is . . . [d]enied, because . . . [Petitioner] is a flight risk by the preponderance of the evidence and there is no bond amount to mitigate the risk of flight." [Dkt. 14-1 at 1].  Clearly, the order did not set out the IJ's reasoning.  While the order states that it was made "[a]fter full consideration of the evidence presented," neither Petitioner's account nor the order indicates if the IJ considered any evidence in application of Guerra factors.  The only factor that the IJ appears to have considered is Petitioner's application for relief, and purported speculative nature thereof—which, without any further reasoning, is not a factor that Matter of Guerra requires for determination of flight risk.

The record, however, indicates that Petitioner legally entered the United States as a conditional lawful permanent resident in 2022 or 2023, resided in the United States since, has family in the U.S., and claims to have a stable residence.  There is no evidence that Petitioner ever evaded any proceedings.  In fact, he duly filed his Form I-751 and has since diligently pursued it.  Even after his I-751's denial, Petitioner requested permission from CBP to present himself in the United States for re-inspection and be placed in the removal proceedings.  There is no record whether the IJ considered these facts.  The record thus indicates that IJ failed to consider Guerra factors, or any evidence related thereto, in determination of flight risk.

13

Accordingly, the Court cannot credit the IJ's statement that the finding of flight risk was based on "full consideration of the evidence presented." Perez Velasquez v. Bondi, No. 26-CV-01759, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026); see Garcia, 817 F. Supp. 3d at 130.

Neither the order nor Petitioner's undisputed account of the hearing explain why the IJ considered Petitioner's I-751 speculative, or a basis for finding Petitioner to be a flight risk. Respondents suggest that Petitioner's pending application for relief is not a sufficiently strong incentive to ensure appearance. Respondents also suggest the IJ apparently relied on USCIS' denial decision to find Petitioner's application for relief as speculative. Given that the IJ provided no factual basis for their decision, Respondents' post hoc justification does not substitute for the meaningful opportunity to be heard that Petitioner must have been afforded before the IJ.

There is thus no evidence as to application of Guerra factors. Instead, the IJ seems to have considered Petitioner's application for relief, purported nature thereof, and USCIS' denial decision, which, without any further reasoning about their relevance or value as to determination of flight risk, does not evince application of Guerra factors to Petitioner's case. This constitutes misapplication of legal standards, as set out in Matter of Guerra, for determination of flight risk. Perez Velasquez, 2026 WL 1042479, at * 6.

Accordingly, the IJ's finding of flight risk was an error of law and the denial of bond was based on misapplication of standards to determine flight risk. Id.; Garcia, 817 F. Supp. 3d at 130 (IJ failed to apply Matter of Guerra to determine flight risk); Judulang v. Chertoff, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008) (considering IJ's finding of present dangerousness). Cf. Zhou v. Trump, No. 25-CV-3503, 2026 WL 937125, at *3 (S.D. Cal. Apr. 7, 2026) (declining to find that bond hearing was legally inadequate when record indicated that IJ applied the Guerra factors).

14

Not only did the IJ improperly apply the law, but the evidence presented does not support a finding that Petitioner is a flight risk as a matter of law. As noted above, the IJ seemingly relied solely on USCIS' denial decision and Petitioner's application for relief to find Petitioner to be a flight risk. Both, taken together, do not—as a matter of law—support a finding of flight risk or discharge the government of its burden to prove flight risk by the preponderance of the evidence.

On January 29, 2026, USCIS issued its decision on Petitioner's Form I-751. USCIS terminated Petitioner's conditional lawful permanent status and determined that Petitioner did not enter into a good faith marriage with a United States citizen, which formed the basis his conditional permanent resident status. The decision only addressed issues related to Petitioner's marriage. [Dkt. 14-2 at 7-10]. It did not address whether Petitioner was a flight risk. Additionally, this finding was primarily based on a single sworn statement by Petitioner before CBP on December 14, 2025, recorded upon Petitioner's return from the Dominican Republic. It was not based upon the usual interview for adjudication of I-751 petitions. Petitioner was not represented during the statement and did not have access to any of his documents submitted with his Form I-751. These facts were in the record before the IJ. Given these facts, the USCIS decision, or any reliance thereof for determination of flight risk, could not be considered in isolation from the way USCIS' decision was rendered. However, the record does not show if the IJ took these facts into account in consideration of USCIS' denial of Petitioner's I-751.

USCIS' denial decision does not show that Petitioner would not pursue his proceedings before the IJ. At best, USCIS' decision is relevant as to the validity of Petitioner's marriage with a United States citizen, and Petitioner can seek its review before an immigration judge during a removal proceeding. Of note, Petitioner's actions indicate that he has thus far pursued this

15

review before an IJ.  After USCIS' decision, Petitioner requested CBP to allow him to present himself at the port of entry for reinspection and be placed in removal proceedings so that he could seek review of USCIS' decision.  Petitioner also submitted his Form I-751 before an immigration court and USCIS on April 7, 2026—two days before his bond determination on April 9, 2026.  Given these positive steps to pursue his removal proceedings, USCIS' decision—having no bearing on Petitioner's likelihood to pursue his removal proceedings—could not, as a matter of law, sufficiently support the finding of flight risk.  As the Court has previously addressed, the finding of flight risk is also not supported by Petitioner's I-751 application, which largely provided reasons that Petitioner was not a flight risk.  Therefore, the IJ's finding is based on insufficient evidence, which could not, as a matter of law, support finding that Petitioner posed risk of flight.

### IV.    REMEDY

Having concluded that Petitioner was not afforded a constitutionally adequate bond hearing, the Court now considers an appropriate remedy for Petitioner.  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  However, the federal courts have wide discretion and flexibility in granting specific habeas relief. See United States v. Torres-Otero, 232 F.3d 24, 30 (1st Cir. 2000) (in the context of §2255, "remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy"); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief.").

Where a petitioner does not pose a danger to the community or is unlawfully determined to be a flight risk, courts have regularly ordered immediate release. See, e.g., Miti, 2026 WL

884639 at *1; <u>Garcia</u>, 817 F. Supp. 3d at 131; <u>Soriano v. Hernandez</u>, No. 26-CV-00900, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026); <u>W.T.M. v. Bondi</u>, 25-CV-02428, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026); <u>Miri v. Bondi</u>, No. 26-CV-00698, 2026 WL 622302, at *11 (C.D. Cal. Mar. 5, 2026).

Here, despite Petitioner's continued diligent efforts to seek review of his I-751, he was unnecessarily detained, and his bond hearing was constitutionally inadequate. Further, the IJ did not find Petitioner to be a danger to the community. Instead, Petitioner was found to be a flight risk based on insufficient evidence. As a result, he has now been detained for over two months—a detention prolonged by violation of his due process rights. Under the circumstances, there is no basis for Petitioner's continued detention, and thus immediate release is an appropriate remedy.

## V.    CONCLUSION

For the foregoing reasons, Reyes Vargas' Petition is **GRANTED**. Respondents are **ORDERED** to release Petitioner.

SO ORDERED.

Dated: May 22, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge

17